The plaintiff proved by the clerk of the county court, who was in office in 1809 and had continued so ever since, except during the years 1832 and 1833, that he had no recollection of ever having seen in his office any petition in writing upon which the above order was made, and that after the most diligent search he had been unable to find one. The *Page 18 
plaintiff proved further, by several witnesses, that they had known her from eight to twenty years, and had always considered her as a free woman.
(22) The defendant then proved by the sheriff of New Hanover that in the year 1820 he saw the plaintiff, then about twelve years old, in the possession of the defendant; that he levied an execution against the defendant, then in his hands on her, and sold her at the house of the defendant, when one John R. London became the purchaser at a fair and full price; that he afterwards saw the plaintiff in the possession of the defendant several times, at his residence, eight miles from Wilmington, and that he never heard that she was free, or pretended to be so, until about the time when this suit was brought. This witness also proved that some time after the sale to London, as before stated, she was levied upon by some person as the property of the defendant, when London interfered and claimed her as his property, upon which she was released. This declaration of London was objected to by the plaintiff, but was admitted by the court. The defendant proved, further, by a witness, that in the year 1833 the witness was requested by the mother of the plaintiff to become her security to the defendant for the hire of her daughter, the defendant; that he became surety as requested and afterwards paid the money to the defendant. This evidence was also objected to by the plaintiff, but was admitted by the court.
His Honor, in charging the jury, told them that it was incumbent on the plaintiff to show that she had been emancipated in the manner prescribed by law; that she must show that the defendant had filed his petition in writing alleging meritorious services on the part of the plaintiff, and expressing a wish to emancipate her; that it was further necessary for her to show that the court had adjudged that she had performed meritorious services, and had given license to the defendant to emancipate her; that the law would then presume that she was emancipated. His Honor further told the jury that there was no evidence that any written petition had been filed by the defendant, and consequently no evidence of its contents; neither was there any evidence that the county court of New Hanover had passed any judgment that the plaintiff had performed meritorious services; that the court was not bound to presume from what appeared on the record of the county court that a written petition was filed by the defendant expressing a wish then to (23) emancipate the plaintiff; nor that the county court had adjudged that the plaintiff had performed meritorious services, particularly as it appeared in evidence that she was not more than one or two years old when the record was made, and could not have performed such meritorious services as the law required. The jury found a verdict for the defendant and the plaintiff appealed. *Page 19 
It is unnecessary to say much on the objections taken to the defendant's evidence. It was offered to repel the evidence of the reputation of freedom given on the part of the plaintiff. If the plaintiff claiming under a particular act of liberation from the defendant, of record and of recent occurrence, being within the lives of these parties, could offer evidence of reputation — of which we do not stop to inquire — such evidence might be met by the proof of acts of ownership inconsistent with the reputation and accompanied by declarations and claims of title by the defendant and others claiming on his title. The evidence of the sheriff might have been proper for another purpose, even if the plaintiff had been in legal form emancipated. She was sold under execution against the defendant, and doubtless that sale would pass the title to Mr. London if the defendant were unable to pay his debts at the time of the emancipation, in the same manner that any other voluntary conveyance is void against creditors. In that case the plaintiff would be the slave, not indeed of the defendant, but of London; and therefore could not bring this or any other action. But it does not appear that any such view as this was taken on the trial; and no doubt the evidence was directed to the other point; as to which we think it proper as evidence in reply.
But upon the principal question in the case our opinion differs from that of his Honor. We think the transcript of the record of the county court, which is set out in the exception, is evidence of an actual emancipation of the plaintiff, provided her identity and that of the defendant with the supposed subject and actor in the county court be established. It purports to order that the plaintiff, in presenti, "be (24) emancipated and set free from slavery," and to be made on the petition of the defendant, then the owner of the plaintiff. The objections taken to this, as an act of emancipation, are that there is no adjudication of the court that the plaintiff had performed such services; that, being proved on the present trial to have been in November, 1809, only two years of age, it is apparent that the plaintiff could not have performed such services, and that the court did not and could not adjudge that she had; and that the order was inoperative unless there was a petition in writing of the defendant alleging such services of the plaintiff and expressing a wish then to emancipate her.
It may be assumed — and indeed we think properly — that there was no evidence of the existence of a petition in writing, or consequently of its contents; as a record is proved by itself, and by nothing else. But the law does not require a petition, as it appears to us. Emancipation is the *Page 20 
act of the master, by which he renounces his right to the services of his slave, and sets her free from him. Any act which purports to have been done with that view would, upon common-law principles, suffice; and in favor of liberty the intention might be inferred from slight acts. The Legislature has, however, upon a ground of public policy, interposed in restraint of the power of the master. It is, perhaps, a matter of doubt in the construction of our statutes whether the owner of a slave may not emancipate without the leave of the court, so as to be an effectual renunciation of his own dominion, although it may be a forfeiture of the slave to the public, and the proper authorities may seize and sell it. That seems to have been the law, at all events up to the year 1796; and perhaps is not altered by the act of that year. But supposing any attempt of the master to liberate a negro to be void, even as to himself, unless it be done in the mode prescribed by the Legislature to vest in a liberated slave all the right and privilege of a free-born negro, it yet remains to be inquired what mode is prescribed by the Legislature. Upon recurring to the statute it is found to be silent as to the means or manner of emancipation, so far as respects the agency of the owner, except only that such "liberation shall be entered of record." Neither a previous (25) nor subsequent deed or writing of emancipation is requisite; nor is a written petition to the court for a license mentioned before the act of 1830. The only memorial mentioned in the act is the record — the usual, indeed indispensable, memorial of whatever is transacted in a court of record. It is convenient and orderly to put into writing a statement of the facts upon which the court is asked to act, and to pray specifically for the order the court is asked to make. It is useful to restrain attempts at imposition, and also to identify the parties. But so far as regards the form which an act of emancipation by the master is to assume so as in strict law to be valid, there is no regulation whatever in the statutes. It may be by petition, by deed, or by bare writing, or it may be oral, only it is to be recorded, whatever, it may be, and that is to perpetuate it. It seems to be supposed that a petition of the owner is requisite, otherwise the act of emancipation is not his, but altogether that of the court. But that is entirely a mistake. The petition is only one mode of showing the consent of the owner. The record, the entry of what he said and did in court, is another mode equally explicit with the other, and of precisely the same grade as evidence. The only difference is that in one case the petition shows his act only, and the minutes show that of the court; while in the other minutes state both what he did and what the court did. Here, their united act as appearing of record, and admitting of no contradiction, is expressly an immediate emancipation of the plaintiff. If the record does not speak the truth the court in which it is can alone make it do so. It imports verity upon the trial of *Page 21 
an action of trespass between these parties, and while it stands cannot be construed into less than a liberation of the defendant's slave by license of the court, granted at his instance.
We are also of opinion that its efficacy is not impugned by its silence as to meritorious services, and that it cannot be impeached by presumption or evidence that the plaintiff had not, or could not, perform them. The acts of a court on a subject within its jurisdiction are presumed to be right, and that presumption cannot be contradicted when the court is one of exclusive jurisdiction, whose judgments are not subject to revision. Such was the county court when this transaction took place. The law forbade it to allow emancipation, except (26) for meritorious services. If the court corruptly granted the license in an improper case the judges were punishable; but the act was valid, because the court had the power. If it was done through error of judgment it is still valid, because the law left it to the judgment of that court. Had the record found the meritorious services, it is clear it could not be disputed upon evidence in this cause. It is, of course, unnecessary that the record should state a fact, as the reason of the judgment, which is not re-examinable elsewhere. There is little doubt that this jurisdiction was often abused; and that for that reason it was established, or rather transferred exclusively to the Superior Courts. But while it existed it was exclusive, and the decision final. The Legislature thought proper to entrust the public security thus far in the hands of that tribunal, and the community was necessarily to abide by its acts. It is worthy of observation, too, that the question is not raised between the plaintiff and the public, although the latter alone has a right to complain of a wrong decision obtained from the county court on this point. The defendant can no more complain of it than of his own act of emancipation; for it was at his instance the court was betrayed into the error.
PER CURIAM. Judgment reversed and a venire de novo ordered.
Cited: Stringer v. Burchem, 34 N.C. 43; Allen v. Allen, 44 N.C. 62;Craige v. Neely, 51 N.C. 173.
(27)